MICHELE J. BEILKE (State Bar No. 194098)
mbeilke@huntonAK.com
JULIA Y. TRANKIEM (State Bar No. 228666)
jtrankiem@huntonAK.com
GABRIEL M. HUEY (State Bar No. 291608)
ghuey@huntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Defendants
STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PICETTI, individually, and on behalf of other members of the general public similarly situated;<br><br>   Plaintiff,<br><br>  v.<br><br>STRYKER CORPORATION, a Michigan corporation; HOWMEDICA OSTEONICS CORP., a New Jersey Corporation; and DOES 1 to 100, inclusive;<br><br>   Defendants. | Case No.: 4:20-cv-00088<br><br>**DEFENDANTS STRYKER CORPORATION AND HOWMEDICA OSTEONICS CORP.'S OPPOSITION TO MOTION TO REMAND**<br><br>Hearing Date: March 11, 2020<br>Time: 2:00 PM<br>Location: Courtroom 6<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed: November 26, 2019<br>Removed: January 2, 2020<br>Trial Date: None Set |

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY...........................................2

        A.      Plaintiff's Complaint And Allegations. .......................................2

        B.      Defendants' Evidence In Support Of Removal. ...........................2

III.    LEGAL STANDARD................................................................................3

        A.      Legal Standard. ............................................................................3

IV.     ARGUMENT AND AUTHORITIES .......................................................5

        A.      The Lack Of Evidence Concerning The Frequency Of The Alleged
                Violations Does Not Ipso Facto Render Violation Rates
                Unreasonable. ..............................................................................5

        B.      Defendants' Evidence And Reasonable Assumptions Establish The
                Amount In Controversy More Likely Than Not Exceeds The $5M
                CAFA Minimum – 28 U.S.C. § 1332(d)(2)..................................7

                1.      The Amount In Controversy For Plaintiff's Meal And Rest
                        Period Claims Is At Least $11,588,290.56. .....................8

                2.      The Amount In Controversy For Plaintiff's Overtime Claim
                        Is At Least $2,897,072.64................................................13

                3.      The Amount In Controversy For Plaintiff's Minimum Wage
                        Claim Is At Least $562,554.30. .......................................14

                4.      The Amount In Controversy For Plaintiff's Failure To Pay
                        Wages At Termination Claim Is At Least $1,562,169.60. ...........15

                5.      Plaintiff's Unreimbursed Business Expense Claim Places
                        Even More At Issue, But The Complaint Is So Vague
                        Defendants Cannot Begin To Estimate The Amount In
                        Controversy...................................................................16

                6.      Attorneys' Fees Are Properly Included And Add At Least
                        Another $864,906.74 To The Amount In Controversy. ...............17

                7.      Plaintiff's Argument That Defendants' Calculations Are
                        Overinflated Because They Assume A 40-Hour Workweek
                        Is Frivolous And Immaterial............................................18

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

i

C.    Defendants' Evidence And Reasonable Assumptions Establish The Amount In Controversy More Likely Than Not Exceeds The $75,000 Complete Diversity Minimum – 28 U.S.C. § 1332(a). ............... 21

    1.    The Amount In Controversy For Plaintiff's Individual Meal And Rest Period Claims Is At Least $19,985.40. ........................... 21

    2.    The Amount In Controversy For Plaintiff's Individual Overtime Claim Is At Least $44,967.15. ....................................... 22

    3.    The Amount In Controversy For Plaintiff's Minimum Wage Claim Is At Least $5,875. ............................................................. 22

    4.    The Amount In Controversy For Plaintiff's Non-Compliant Wage Statement Claim Is At Least $2,550.00. ............................ 23

    5.    The Amount In Controversy For Plaintiff's Failure To Pay Wages Upon Termination Claim Is At Least $9,938.40. .............. 24

    6.    Attorneys' Fees Place At Least $13,348.03 At Issue. ................... 24

    7.    A Court Can Exercise Jurisdiction Under 28 U.S.C. § 1332(a) In A Class Action. ...................................................................... 25

V.    CONCLUSION ............................................................................................. 25

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*United Parcel Serv., Inc. v. Super. Ct.*
   196 Cal. App. 4th 57 (2011) ................................................................. 12

**OTHER CASES**

*Abrego Abrego v. The Dow Chemical Co.*
   443 F. 3d 676 (9th Cir. 2006) ................................................................ 4

*Altamirano v. Shaw Industries, Inc.*
   No. C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) .................. 17

*Alvarez v. Office Depot, Inc.*
   No. CV 17-7220 PSG, 2017 WL 5952181 (C.D. Cal. Nov. 30, 2017) ............. 9, 13

*Blevins v. Republic Refrigeration, Inc.*
   CV 15-04019 MMM, 2015 WL 12516693 (C.D. Cal. Sept. 25, 2015) ................ 22

*Bryant v. NCR Corp.*
   284 F. Supp. 3d 1147 (S.D. Cal. 2018) ........................................... passim

*Buchanan v. Aramark Campus, LLC*
   No. 19-cv-00384-VKD, 2019 WL 3302164 (N.D. Cal. July 23, 2019)............... 12

*Caminetti v. United States*
   242 U.S. 470 (1917)............................................................................ 25

*Coleman v. Estes Express Lines, Inc.*
   730 F. Supp. 2d 1141 (C.D. Cal. 2010)............................................... 4, 6

*Dart Cherokee Basin Operating Co., LLC v. Owens*
   574 U.S. 81 (2014)............................................................................ 3, 18

*Feao v. UFP Riverside, LLC*
   No. CV 17-3080 PSG, 2017 WL 2836207 (C.D. Cal. June 29, 2017) ................ 13

*Fong v. Regis Corp.*
   No. C 13-04497 RS, 2014 WL 26996 (N.D. Cal. Jan. 2, 2014)..................... 15, 17

*Galt G/S v. JSS Scandinavia*
   142 F. 3d 1150 (9th Cir. 1998) ................................................................ 17

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

iii

*Herrera v. Carmax Auto Superstores Cal, LLC*
  No. EDCV-14-776-MWF, 2014 WL 12586254 (C.D. Cal. June 12,
  2014) ........................................................................................................ 6, 21

*Ibarra v. Manheim Invs., Inc.*
  775 F. 3d 1193 (9th Cir. 2015) .................................................... 3, 4, 6

*In re Watts*
  298 F. 3d 1077 (9th Cir. 2002) ............................................................ 12

*Jones v. Tween Brands, Inc.*
  No. 14-cv-01613, 2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) ............ 10

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*
  199 F. Supp. 2d 993 (C.D. Cal. 2002) .............................................. 4, 13

*Korn v. Polo Ralph Lauren Corp.*
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) ............................................ 5, 16

*Kroske v. U.S. Bank Corp.*
  432 F. 3d 976 (9th Cir. 2005) .............................................................. 17

*LaCross v. Knight Transp. Inc.*
  775 F. 3d 1200 (9th Cir. 2015) .............................................................. 4

*Lewis v. Verizon Commc'ns, Inc.*
  627 F. 3d 395 (9th Cir. 2010) ......................................................passim

*Lippold v. Godiva Chocolatier, Inc.*
  No. C 10-00421 SI, 2020 WL 1526441 (N.D. Cal. Apr. 15, 2010) ........ 14

*Long v. Destination Maternity Corp.*
  No. 15cv2836-WQH-RBB, 2016 WL 1604968 (S.D. Cal. Apr. 21,
  2016) ...................................................................................................... 15

*Lopez v. Aerotek, Inc.*
  No. SACV 14-00803-(CJGx), 2015 WL 2342558 (C.D. Cal. May 14,
  2015) .................................................................................................. 7, 21

*Lowdermilk v. U.S. Bank National Ass'n*
  479 F. 3d 994 (9th Cir. 2007) ................................................................ 6

*Mackall v. Healthsoure Global Staffing, Inc.*
  No. 16-cv-03810-WHO, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) ......... 15

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

iv

*Marquez v. NLP Janitorial, Inc.*
  No. 16-cv-06089-BLF, 2019 WL 652866 (N.D. Cal. Feb. 15, 2019).....................12

*Muniz v. Pilot Travel Centers, LLC*
  No. CIV S-07-0325, 2007 WL 1302504 (E.D. Cal. May 1, 2007) ........................11

*Navarro v. Servisair, LLC*
  No. 08-cv-02716-MHP, 2008 WL 3842984 (N.D. Cal. Aug. 14, 2008) ...............10

*Ngoc Nguyen v. Wells Fargo Bank, N.A.*
  749 F. Supp. 2d 1022 (N.D. Cal. 2010).......................................................................4

*Patel v. Nike Retail Servs.*
  58 F. Supp. 3d 1032 (N.D. Cal. 2014).....................................................1, 6, 11, 21

*Rea v. Michaels Stores, Inc.*
  742 F. 3d 1234 (9th Cir. 2014) ...................................................................... passim

*Rodriguez v. AT&T*
  728 F. 3d 975 (9th Cir. 2013) .......................................................................................4

*Roth v. Comerica Bank*
  799 F. Supp. 2d 1107 (C.D. Cal. 2010) ....................................................................11

*Soratori v. Tesoro Refining & Marketing Co. LLC*
  No. CV-15-1554, 2017 WL 1520416 (C.D. Cal. Apr. 26, 2017)....................10, 24

*Stanley v. Distribution Alternatives, Inc.*
  EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec.
  7, 2017) ...........................................................................................................................10

*Staton v. Boeing Co.*
  327 F. 3d 938 (9th Cir. 2003) ....................................................................................17

*Tan v. GrubHub, Inc.*
  171 F. Supp. 3d 998 (N.D. Cal. 2016)..............................................................16, 17

*Troester v. Starbucks Corp.*
  CV 12-07677-CJC, 2020 WL 553572 (C.D. Cal. Jan. 27, 2020) ..........................14

**FEDERAL STATUTES**

28 U.S.C. § 1332(a) ...........................................................................................1, 21, 25

28 U.S.C. § 1332(d)(2) .........................................................................................1, 7, 25

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071**

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

28 U.S.C. § 1332 (d)(2)(A) ............................................................................ 1

28 U.S.C. § 1332 (d)(5)(B) ............................................................................ 1

28 U.S.C. § 1446(a) ................................................................................... 2, 3

**CALIFORNIA STATUTES**

Cal. Labor Code § 512 ................................................................................ 12

Cal. Labor Code § 203 ................................................................................ 15

Cal. Labor Code § 226 ................................................................................ 24

Cal. Labor Code § 226(e) ........................................................................... 23

Cal. Labor Code § 226.7 ....................................................................... 11, 12

Cal. Labor Code § 510(a) ........................................................................... 20

Cal. Labor Code § 1194(a) ......................................................................... 18

Cal. Labor Code § 1194.2 ........................................................................... 15

Cal. Labor Code § 2802 ........................................................................ 16, 17

Cal. Labor Code § 2802(d) ......................................................................... 18

**OTHER AUTHORITIES**

Richard Simmons Wage and Hour Manual for California Employers ....................... 18

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

## I.    **INTRODUCTION**

The Court must deny Plaintiff Robert Picetti's ("Plaintiff") Motion and retain jurisdiction.  Plaintiff **concedes** that all the requirements for exercising jurisdiction, other than the amount-in-controversy requirements under the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)) and complete diversity (28 U.S.C. § 1332(a)), have been met.[1]

As to the amount-in-controversy requirement, Plaintiff attempts to avoid federal jurisdiction by hiding behind intentionally vague allegations in the Complaint.  The Ninth Circuit and Northern District, however, have ruled that where, as here, the Complaint fails to allege, and a plaintiff fails to provide, evidence limiting the frequency of the alleged violations, a removing defendant is entitled to assume up to a 100% violation rate – the maximum plausible amount in controversy.  *See Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 401 (9th Cir. 2010) (holding removing defendant entitled to assume "[t]he amount in controversy . . . comprises the total billings" because "[p]laintiff's motion to remand proffered no evidence or new allegation that the amount the class might be entitled to receive was less than Verizon's total . . . billings"); *Patel v. Nike Retail Servs.*, 58 F. Supp. 3d 1032, 1040-42 (N.D. Cal. 2014) (a plaintiff cannot "have . . . [his] cake and eat it too" by resting on vague allegations and faulting the removing defendant "for failing to prove what [p]laintiff means . . . and . . . the truth of [his] allegations").

Defendants' calculations and logical assumptions are reasonable and grounded in evidence and the Complaint's own allegations.  Plaintiff's criticisms of these calculations and assumptions have no merit.  Defendants are not required to prove Plaintiff's claims.  Plaintiff's argument that he and the putative class worked more than 156 hours per week is speculative and virtually impossible.  Even if they worked that many hours, the amount in controversy – still – would not be less than $5M.

---

[1] Plaintiff does not argue the absence of minimal or complete diversity of citizenship or that the size of the putative class is less than 100 members.  Therefore, there is no dispute that diversity exists, and the size of the putative class is sufficient.  *See* 28 U.S.C. § 1332(a), (d)(2)(A), (d)(5)(B).

Defendants need not produce employment records to meet its burden on removal.  As shown by the calculations below, the amount in controversy for the class claims is well over $5M minimum for purposes of CAFA, and for the individual claims, well over the $75k threshold.  Thus, the Court must deny Plaintiff's Motion.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Plaintiff's Complaint And Allegations.

The Complaint alleges "Defendants engaged in a pattern and practice of wage abuse against their commissioned-based employees within the State of California." (Compl. ¶ 24.)  More specifically, Plaintiff alleges that "as a pattern and practice, during the relevant time period set forth herein," Defendants failed to (1) pay overtime wages for all overtime hours worked to, (2) provide meal periods to, (3) provide rest periods to, (4) pay at least minimum wages for all hours worked to, (5) pay all wages owed upon termination to, (6) provide accurate itemized wage statements to, (7) keep complete and accurate payroll records for, and (8) reimburse him and the other putative class members.  (Compl. ¶¶ 35-40, 92, 96.)  Plaintiff seeks unpaid minimum and overtime wages, unpaid meal and rest period premiums, penalties, reimbursement for expenses, and attorneys' fees.  (See, e.g., Prayer for Relief ¶¶ 5-50.)  Noticeably absent, however, are any further details, including the frequency of the alleged violations.[2]

### B.   Defendants' Evidence In Support Of Removal.

Although not required (28 U.S.C. § 1446(a) [notice of removal need only "contain[ ] a short and plain statement of the grounds for removal"]), concurrently with their Notice of Removal ("Notice"), Defendants filed the Declaration of Andrew Quesnelle in Support thereof.[3]  During the class period, Defendants employed at least

---

[2] Plaintiff's failure to plead sufficient facts to support his claims is also the subject of the pending Motion to Dismiss or, in the Alterative, Strike Allegations from the Complaint ("Motion to Dismiss").  (Dkt. 7.)  Instead of amending the Complaint, Plaintiff filed an Opposition to the Motion to Dismiss ("Opposition to Motion to Dismiss") arguing that the barebones allegations are sufficient (they are not).  (Dkt. 8.)  Plaintiff's Motion relies on the same vague allegations in an attempt to avoid removal.  For the reasons explained in Defendants' Motion to Dismiss, Reply in Support of Motion to Dismiss (Dkt. 9), and herein, however, Plaintiff's vague allegations are insufficient to avoid federal court jurisdiction and/or dismissal.

[3] The Declaration of Andrew Quesnelle is cited herein as "Quesnelle Decl."

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1   250 putative class members, who worked approximately 32,802 workweeks, and earned

2   an average of $2,355 in commissions per workweek.  (Quesnelle Decl. ¶ 10.)  The

3   employment of approximately 108 putative class members ended on or after November

4   26, 2016.  (*Id*.)

5          Howmedica employed Plaintiff as a full-time employee scheduled to work

6   approximately five (5) days per week.  (*Id*. at ¶ 6.)  Between August 1, 2016 and June

7   30, 2017, Howmedica employed Plaintiff as a Sales Associate with an annual salary of

8   $70,000.  (*Id*. at ¶ 7.)  On July 1, 2017, Plaintiff began a new commission-only position

9   as a Sales Representative.  (*Id*. at ¶ 8.)  Plaintiff remained employed until August 8,

10  2017, and he earned $9,939.48 in commissions.  (*Id*.)

## III.   LEGAL STANDARD

### A.   Legal Standard.

13         Contrary to Plaintiff's suggestion (Motion at 3:11-22), there is no presumption

14  against removal.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81,

15  89 (2014) ("[N]o anti-removal presumption attends cases invoking CAFA, which

16  Congress enacted to facilitate adjudication of certain class actions in federal court.").

17  Rather, as the legislative history explains, "CAFA's 'provisions should be read broadly,

18  with a ***strong preference*** that interstate class actions be heard in federal court if

19  properly removed by any defendant.'"  *Id.* (emphasis added); *see also Ibarra v.*

20  *Manheim Invs., Inc.*, 775 F. 3d 1193, 1197 (9th Cir. 2015) (Congress "designed the

21  terms of CAFA specifically to permit a defendant to remove certain class or mass

22  actions into federal court" and "intended CAFA to be interpreted expansively.").

23         As a result, "[a] defendant's notice of removal need only include a plausible

24  allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*,

25  574 U.S. at 89; *see also* 28 U.S.C. § 1446(a).[4]

---

[4] For that reason, to the extent Plaintiff contends Defendants were required to provide evidence with the
Notice to support removal, his argument has no merit.  (*Compare* Motion at 3:7-9 [arguing "Defendants failed
to prove by a preponderance of the evidence that the amounts in controversy exceed the jurisdictional
minimums"] *with* Motion at 4:12-18 [conceding "good faith allegation that the amount-in-controversy
exceeds the jurisdictional threshold will suffice unless challenged"].)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

"Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. The Dow Chemical Co.*, 443 F. 3d 676, 683 (9th Cir. 2006). The removing defendant need only show the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996) (defining "preponderance of the evidence" as "more likely than not")); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975, 981 (9th Cir. 2013) (overruling prior precedent requiring proof of the amount in controversy to a "legal certainty").

"The amount in controversy is simply an estimate of the total amount in dispute . . . ." *Lewis*, 627 F. 3d at 400. The "court must 'assum[e] that the allegations of the complaint are true and assum[e that] a jury [will] return[ ] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). Thus, the removing defendant need only show what might be recovered if the plaintiff proves his claims by making assumptions consistent with the allegations in the complaint and other evidence. *Ibarra*, 775 F. 3d at 1198 (clarifying jurisdictional "requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure"); *LaCross v. Knight Transp. Inc.*, 775 F. 3d 1200, 1201 (9th Cir. 2015) (holding removing defendant may rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds [the statutory minimum]" as long as "the chain of reasoning and its underlying assumptions [are] reasonable").

"The burden is not 'daunting,' and 'a removing defendant is ***not*** obligated to research, state, and prove the plaintiff's claims for damages.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (internal quotations

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

omitted) (emphasis in original); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008) (same).

## IV.    ARGUMENT AND AUTHORITIES

Defendants have shown – through Mr. Quesnelle's declaration and reasonable assumptions derived from Plaintiff's own allegations – that the amount in controversy more likely than not exceeds the minimum threshold sufficient to establish jurisdiction under CAFA ($5M) and complete diversity ($75,000).  Rather than submitting evidence demonstrating otherwise, Plaintiff attempts to circumvent federal jurisdiction by hiding behind vague "pattern and practice" allegations and blaming Defendants for failing to produce evidence of the frequency of the alleged violations.  (Motion at 6:7-17.)  As explained in detail, Plaintiff's Motion must be denied because, *inter alia*, his primary argument contravenes published, binding Ninth Circuit and Northern District authority.

### A.    The Lack Of Evidence Concerning The Frequency Of The Alleged Violations Does Not Ipso Facto Render Violation Rates Unreasonable.

Citing *Ibarra*, Plaintiff argues that whenever "the Complaint [does not] specify the frequency of the alleged violations," the removing defendant must provide evidence to support the proffered violation rates.  (Motion at 6:5-17, 7:3-21, 11:21-22:7, 15:4-16:21, 12:24-7, 19:13-20.)  He is wrong.

As reflected by the Ninth Circuit in *Lewis* and *Rea*, where the Complaint fails to allege and the plaintiff fails to provide evidence limiting the frequency of the alleged violations, a removing defendant is entitled to assume up to a 100% violation rate – ***the maximum plausible amount in controversy***.  *Lewis*, 627 F. 3d at 398, 401; *Rea v. Michaels Stores, Inc.*, 742 F. 3d 1234, 1239 (9th Cir. 2014) (denying motion to remand where "substantial, plausible evidence" showed the amount-in-controversy requirement was met and there was "no evidence at all to the contrary").

The reason Defendants are not required to provide evidence as to the frequency of the alleged violations is twofold.  First, as explained by the Northern District, Plaintiff – not Defendants – are "in a much better position to know" the frequency of

5

the alleged violations.  *Patel*, 58 F. Supp. 3d at 1040.  <u>Second</u>, as is the case here, "removing defendant[s are] often incapable of producing any evidence going directly to the frequency of the violations, especially given that [they] . . . disagree[] that any violation occurred at all."  *Herrera v. Carmax Auto Superstores Cal, LLC*, No. EDCV-14-776-MWF (VBKx), 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014).  Thus, Plaintiff cannot "have . . . [his] cake and eat it too" by resting on vague allegations and faulting the removing defendant "for failing to prove what [p]laintiff means . . . and . . . the truth of [his] allegations."  *Patel*, 58 F. Supp. 3d at 1040-42 (citing *Navarro v. Servisair, LLC*, No. 08-cv-02716-MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008)).  Stated differently, allowing Plaintiff "to avoid federal jurisdiction by purposefully opaque pleading" is "illogical" because "the plaintiff is the master of his complaint and can avoid federal jurisdiction by limiting potential recovery."  *Herrera*, 2014 WL 12586254 at *2; *Lowdermilk v. U.S. Bank National Ass'n*, 479 F. 3d 994, 998-99 (9th Cir. 2007) (emphasizing "it is well established that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction").  Holding otherwise would improperly impose an elevated burden on Defendants by forcing them to "research, state, and prove" Plaintiff's claims.  *See Coleman*, 730 F. Supp. 2d at 1148.

*Ibarra* – the primary case relied upon by Plaintiff[5] – is consistent with Defendants' position.  Unlike *Lewis*, *Rea*, *Patel*, and *Herrera* where there was no allegation suggesting any limitation as to the frequency of the alleged violations, in *Ibarra*, the court held that assuming a daily violation rate (i.e. 100%) was unreasonable because the Complaint alleged plaintiff "worked overtime hours without compensation on *'multiple occasions* during his employment,' *suggesting that Manheim's practices occurred several times but not on each and every shift*."  *Ibarra*, 775 F. 3d at 1199 (emphasis added).

Here, by contrast, the Complaint alleges Defendants "engaged in a pattern and

---

[5] The other cases cited by Plaintiff for his argument are all distinguishable on the ground that they contained limiting allegations or evidence, erroneously interpret *Ibarra*, have been overruled by subsequent binding authority in that district, and/or improperly impose an elevated burden on the removing party.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

practice of wage abuse" against him and the putative class.  (Compl. ¶¶ 24, 36, 57-60, 67-69.)  Plaintiff neither defined "pattern and practice" in the Complaint nor submitted evidence as to the frequency of the alleged violations.  As such, it is entirely reasonable for Defendants to assume up to a 100% violation rate for each of Plaintiff's claims. *See, e.g.*, *Lewis*, 627 F. 3d at 398, 401; *Rea*, 742 F. 3d at 1239; *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to the violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify her allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

**B.    Defendants' Evidence And Reasonable Assumptions Establish The Amount In Controversy More Likely Than Not Exceeds The $5M CAFA Minimum – 28 U.S.C. § 1332(d)(2).**

The Complaint defines the putative class as follows: "All current and former California-based . . . employees . . . of Defendants paid wholly or in-part on a commission basis within the State of California at any time during the prior from four years preceding the filing of this Complaint to final judgment."  (Compl. ¶ 12.)  During the class period, Defendants employed at least 250 putative class members, who worked approximately 32,802 workweeks, and earned an average $2,355 in commissions per workweek.  (Quesnelle Decl. ¶ 10.)  Approximately 108 of putative class members' employment ended on or after November 26, 2016.  (*Id.*)

///

///

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

### 1.    The Amount In Controversy For Plaintiff's Meal And Rest Period Claims Is At Least $11,588,290.56.

#### a.    Defendants' Meal And Rest Period Calculations Are Reasonable.

Plaintiff alleges Defendants, "[a]s a pattern and practice during the relevant time period," failed to provide meal and rest periods in violation of California law.  (Compl. ¶¶ 24, 36, 57-60, 67-69 [emphasis added].)  Plaintiff seeks to recover, on behalf of himself and each putative class member, one premium payment for each workday Defendants failed to provide a meal period and an additional premium payment for each workday they failed to provide a rest period.  (Compl. ¶¶ 62, 71; Prayer for Relief ¶¶ 11, 18.)

As explained in the Notice, based on a standard 40-hour workweek – which for the reasons explained in Section IV(B)(7) herein is reasonable – and an average of $2,355 in commissions per workweek, the average putative class members' regular rate is $58.88 ($2,355 [Average Commissions per Workweek] / 40 [Hours per Workweek] = $58.88 [Regular Rate per Hour]).  Assuming three (3) meal period violations and three (3) rest period violations per workweek, Plaintiff's meal and rest period claims place at least **$11,588,290.56**[6] at issue.

Assuming three (3) meal period violations and three (3) rest period violations is conservative.  In *Bryant*, "***the Complaint offered no guidance as to the frequency of the alleged violations***, only that [d]efendant had *'a policy and practice'* of meal and rest period violations.*"  284 F. Supp. 3d at 1151 (emphasis added).  In the notice of removal, the defendant "conservatively assumed the putative class members were not provided three of the five meal periods and three of ten rest periods they were entitled to receive each work week." *Id.*  Although the plaintiff argued the defendant "should

---

[6] ($58.88 [Regular Rate per Hour] x 3 [Meal Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) + ($58.88 [Regular Rate per Hour] x 3 [Rest Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) = $11,588,290.56.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

1    have provided evidentiary support as to the assumed violation rates," the court

2    dismissed the argument noting the "[plaintiff] fail[ed to] submit any evidence indicating

3    a contrary rate of violation" and "[i]ndeed, . . . ha[d] not even submitted his own

4    declaration stating he experienced less frequent rates of violation than those asserted by

5    [d]efendant." *Id.* at 1151 n.3.  As a result, the court held the "[d]efendant's assumed

6    violation rates [were] reasonable" – "***even though assumption of a 100 percent***

7    ***violation rate may have been reasonable based on the allegations in the Complaint.***"

8    *Id.* at 1151 (emphasis added).

9         Here, Plaintiff's Complaint alleges Defendants engaged in a "pattern and practice

10   during the relevant time period" of failing to provide him and the other class members

11   with meal and rest periods.  (Compl. ¶¶ 24, 36, 57-60, 67-69.)  The Complaint does not

12   define "pattern and practice" or otherwise limit the frequency of the alleged violations.

13   Plaintiff did not submit evidence suggesting a violation rate contrary to the rate

14   proffered by Defendants.  Defendants are, thus, entitled to assume up to a 100%

15   violation rate, which places the amount in controversy for these claims alone at

16   $19,313.817.60[7].  Whether the Court accepts the conservative estimate in Defendants'

17   Notice of $11,588,290.56 or the higher estimate of $19,313.817.60 – both of which are

18   reasonable and uncontradicted by Plaintiff's allegations or the evidence – Plaintiff's

19   meal and rest period claims far exceed the $5M minimum amount in controversy

20   requirement to establish jurisdiction under CAFA (without taking into account any of

21   Plaintiff's other claims).  *See, e.g.*, *Bryant*, 284 F. Supp. 3d at 1151 (holding a

22   complaint alleging a policy and practice of meal and rest period violations with no

23   guidance as to the frequency justifies an estimate of at least three missed meal periods

24   and three missed rest periods per week and up to five missed meal periods and five

25   missed rest periods per week); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG

---

[7] ($58.88 [Regular Rate per Hour] x 5 [Meal Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) + ($58.88 [Regular Rate per Hour] x 5 [Rest Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) = $19,313.817.60.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

(AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (holding assumption of three rest period violations per week reasonable where the complaint alleged "a uniform practice of meal and rest period violations" and "'[t]he operative pleading . . . [was] indeterminate with respect to key information,' including the violation rates for these causes of action"); *Stanley v. Distribution Alternatives, Inc.*, EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro,* 2008 WL 3842984 at *9 (assuming three weekly meal period violations was reasonable where the plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

        b.    <u>Plaintiff's Argument That Defendants' Calculations Should Be Disregarded Unless Plaintiff's And The Putative Class Members' Employment Records Are Admitted Into Evidence Is Meritless.</u>

Plaintiff erroneously argues that Defendants' evidence is insufficient because Defendants did not support the proffered violation rates with "work schedules, shift lengths, time cards, [and] other records." (Motion at 8:11-12.) There is no such requirement. A removing defendant can satisfy its burden, as Defendants did here, with a declaration. *See, e.g., Bryant*, 284 F. Supp. 3d at 1150-51 (rejecting "Plaintiff's argument" because "Defendant need not 'produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy'"); *Soratori v. Tesoro Refining & Marketing Co. LLC*, No. CV-15-1554, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) (holding declaration providing summary of business records sufficient to satisfy removing defendant's burden); *Jones v. Tween Brands, Inc.*, No. 14-cv-01613, 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) ("While [plaintiff]

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

---

10

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

argues that [the defendant] must provide the payroll data upon which [defendant's representative] relies to support removal, the Court finds that [defendant] is not required to meet such a high burden."); *Muniz v. Pilot Travel Centers, LLC*, No. CIV S-07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation.").  Holding otherwise would defy binding authority precluding Plaintiff from avoiding removal by resting on vague allegations and faulting Defendants for failing to prove his claims.  *See, e.g.*, *Rea*, 742 F. 3d at 1239; *Patel*, 58 F. Supp. 3d at 1040-42.

c.   <u>Plaintiff's Argument That Defendants' Calculations Are Overinflated Because Non-Exempt Employees Are Entitled To Only One Meal Period Or Rest Period Premium Payment Per Day Is Predicated On Outdated Authority.</u>

Relying on *Roth*, Plaintiff asserts that when a meal period and rest period violation occurs in the same day, the employee is entitled to "just one additional hour's wage, not two."  (Motion at 10:7-18 [citing *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1120 (C.D. Cal. 2010) ("While it is theoretically possible that no class member missed meal and rest periods on the same day, defendants have proffered no evidence that would permit the court to draw such an inference.")].)

Plaintiff's argument is flawed because *Roth* is outdated.  Plaintiff's Motion indeed cites authority and specific language therein directly contradicting his argument. (Motion at 11:1-3 [citing *United Parcel Serv., Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 70 (2011).)  After *Roth*, the Second District of the California Court of Appeal held that Labor Code section 226.7 authorizes non-exempt employees to "recover up to two additional hours of pay on a single work day for meal period and rest period violations – one for failure to provide a meal period and another for failure to provide a rest period."  *Id.*; Cal. Labor Code § 226.7.  Unless "there is convincing evidence that" the California Supreme Court would interpret Labor Code section 226.7 differently, the

11

1   Court "must follow" *United Parcel Serv., Inc.  See In re Watts*, 298 F. 3d 1077, 1083

2   (9th Cir. 2002) (instructing "federal courts [to] follow the decision of the intermediate

3   appellate courts of the state unless there is convincing evidence that the highest court of

4   the state would decide different").  Plaintiff does not cite any authority suggesting that

5   the California Courts of Appeal are split, let alone that the California Supreme Court

6   would come to the opposite conclusion.  Tellingly, several cases in the Northern

7   District since then have cited *United Parcel Serv., Inc.* for that very proposition.  *See,*

8   *e.g.*, *Marquez v. NLP Janitorial, Inc.*, No. 16-cv-06089-BLF, 2019 WL 652866, at *7

9   (N.D. Cal. Feb. 15, 2019) (citing *United* with approval); *Buchanan v. Aramark Campus,*

10   *LLC*, No. 19-cv-00384-VKD, 2019 WL 3302164, at *4 (N.D. Cal. July 23, 2019)

11   (same).  Thus, Defendants' calculation is not overinflated.

d.   Plaintiff's Argument That Defendants' 30% Rest Break Violation Rate Is Actually 60% Is Meritless And Places Form Over Substance.

14   Plaintiff's argument that Defendants' "30% violation rate for rest breaks . . . is

15   actually 60%," has no merit.  (Motion at 11:1-6.)  A non-exempt employee working a

16   standard 5-day, 40-hour workweek is entitled to five meal periods and ten rest periods

17   per workweek.  Cal. Labor Code §§ 226.7, 512.  In *Bryant*, the defendant

18   "conservatively assumed the putative class members were not provided . . . three of ten

19   rest periods they were entitled to receive each work week . . . ."  *Bryant*, 284 F. Supp.

20   3d at 1151.  Simple math demonstrates that this is equivalent to a 30% violation rate per

21   workweek (3 violations / 10 potential violations).  In expressing three rest period

22   violations as a rate, the court in *Bryant* came to the same conclusion: "Defendant

23   assumed . . . a 30 percent violation rate for the rest period claim."  *Id.*

24   Regardless, Plaintiff's argument places form over substance.  Defendants

25   calculated the amount in controversy based on a reasonable assumption of three rest

26   period violations per workweek.  (Notice at 7:17-21 [defining "a 30% violation rate per

27   putative class member per week" as "three (3) non-compliant rest periods per putative

28   class member per week"].)  Whether Plaintiff characterizes three rest period violations

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

12

as a 30% or 60% violation rate, assuming three violations per week is conservative and reasonable in light of Plaintiff's allegation that Defendants engaged in a "pattern and practice" rest period violations (Compl. ¶¶ 36, 67-69), concession that the Complaint is void of allegations "specify[ing] the frequency of the alleged violations" (Motion at 6:7-9), and failure to submit evidence to the contrary.  *See, e.g.*, *Bryant*, 284 F. Supp. 3d at 1151 (holding three rest period violations per week as reasonable based on allegation that "Defendant had 'a policy and practice' of . . . rest period violations'"); *Alvarez*, 2017 WL 5952181, at *3; *Stanley*, 2017 WL 6209822 at *2; *Feao v. UFP Riverside, LLC*, No. CV 17-3080 PSG (JPRx), 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (holding violation rate of three rest periods per week as reasonable).

**2.      The Amount In Controversy For Plaintiff's Overtime Claim Is At Least $2,897,072.64.**

Plaintiff alleges Defendants, "[a]s a pattern and practice during the relevant time period[,] . . . failed to pay overtime wages owed to Plaintiff and the other class members." (Compl. ¶¶ 24-25, 35, 49.)  Plaintiff further alleges he "and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants." (Compl. ¶ 23.)  Plaintiff seeks to recover, on behalf of himself and each putative class member, "unpaid overtime compensation . . . ." (Compl. ¶¶ 51; Prayer for Relief ¶¶ 6.)

The Complaint does not include any allegation limiting the number of overtime hours worked, and Plaintiff has not submitted any evidence.  As such, as explained in Section IV(A) herein, Defendants may assume a 100% violation rate as to Plaintiff's overtime claim.  Regardless, however, as explained in Defendants' Notice, based on an estimate of even just one (1) violation per week, the amount in controversy for this claim is no less than **$2,897,072.64**[8].  *See, e.g., Stanley*, 2017 WL 6209822 at *2 (holding violation rate of "two hours of overtime" reasonable where the complaint

---

[8] 32,802 (Approximate Workweeks in Liability Period) x 1 (Violation per Workweek) x $58.88 (Regular Rate per Hour) x 1.5 (Overtime Rate) = $2,897,072.64.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071**

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates").

### 3. The Amount In Controversy For Plaintiff's Minimum Wage Claim Is At Least $562,554.30.

Plaintiff alleges Defendants, "[a]s a pattern and practice during the relevant time period . . . failed to pay Plaintiff and the other class members at least minimum wages for all hours worked." (Compl. ¶¶ 24, 37, 74.)  Plaintiff further alleges he "and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants." (Compl. ¶ 23.)  Plaintiff seeks to recover, on behalf of himself and each putative class member, "the unpaid balance of their minimum wage compensation . . . and liquidated damages in an amount equal to the wages unlawfully paid . . . ." (Compl. ¶¶ 75-76; Prayer for Relief ¶¶ 24, 27.)

The Complaint does not include any allegation limiting the number of hours worked for which Defendants failed to pay minimum wages, and Plaintiff has not submitted any evidence.  Thus, as explained in Section IV(A) herein, Defendants may assume a 100% violation rate as to Plaintiff's minimum wage claim.  Even assuming one (1) violation per week, the unpaid wage component of Plaintiff's claim for minimum wages places at least $321,459.60[9] at issue.  *See, e.g., Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2020 WL 1526441, at *3 (N.D. Cal. Apr. 15, 2010) (holding assumption of 13-hour workday reasonable where the complaint alleges plaintiff "regularly and/or consistently worked in excess of 12 hours per day").

Unlike Plaintiff's claim for minimum wages, which is arguably subject to a four-year statute of limitations, "[t]he statute of limitations on a liquidated damages claim is . . . three years." *Troester v. Starbucks Corp.*, CV 12-07677-CJC (PJWx), 2020 WL 553572, at *3 (C.D. Cal. Jan. 27, 2020) (citing Cal. Labor Code § 1194.2).  Therefore,

---

[9] 32,802 (Approximate Workweeks in Liability Period) x 1 (Violation per Workweek) x $9.80 (Blended Minimum Wage in California from 2015 to 2019) = $321,459.60.

Plaintiff's request for liquidated damages adds at least another $241,094.70[10] to the amount in controversy for her minimum wage claim.  Cal. Labor Code § 1194.2 (authorizing recovery for "liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon").

In total, Plaintiff's minimum wage claim places at least **$562,554.30** at issue.

### 4.     The Amount In Controversy For Plaintiff's Failure To Pay Wages At Termination Claim Is At Least $1,562,169.60.

Plaintiff alleges Defendants, "[a]s a pattern and practice during the relevant time period[,] . . . failed to pay Plaintiff and the other class members the wages owed to them upon discharge or resignation."  (Compl. ¶¶ 24, 38, 79.)  In addition to the unpaid wages described above, Plaintiff seeks to recover, on behalf of himself and each putative class member, "the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to Labor Code section 203."  (Compl. ¶¶ 81-82; Prayer for Relief ¶ 31.)

Approximately 108 putative class members had their employment end on or after November 26, 2016.  (Quesnelle Decl. ¶ 10.)  Based on the allegations in the Complaint and the derivative nature of Plaintiff's claim, it is reasonable to assume each of the 108 putative class members suffered at least one unpaid wage violation.  *See, e.g.*, *Mackall v. Healthsoure Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) ("[A]llegations of willful failure to timely pay wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate."); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) (holding allegation that employer "systematically failed to pay '*all*' wages due and owing' upon termination . . . reasonably supports the assumption that each former employee might be entitled to the statutory maximum damages"); *Long v. Destination Maternity Corp.*, No. 15cv2836-

---

[10] $321,459.60 (Unpaid Minimum Wages) x 75% (three years) = $241,094.70.

WQH-RBB, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (where plaintiff alleged "class members have still not been paid money owed to them at the end of their employment," holding it is reasonable to assume "that each of the class members who have left [d]efendant's employ would seek the maximum thirty-day waiting penalty").

Moreover, because Plaintiff neither alleged in the Complaint nor submitted evidence showing Defendants paid him and/or the putative class members all unpaid wages owed before the 30th day following the end of their employment, Defendants reasonably assume Plaintiff and the putative class members are entitled to the statutory maximum (*i.e.,* 30 times their daily wages).  *See Lewis*, 627 F. 3d at 400 (amount in controversy includes maximum amount plaintiff could recover if allegations in complaint are proven); *Korn*, 536 F. Supp. 2d at 1205 ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.").

As explained above, the average putative class members' regular rate is $58.88. Assuming they typically worked a standard 5-day, 40-hour workweek like Plaintiff (see Quesnelle Decl. ¶ 6; Compl. ¶ 23), their daily rate of pay would be $471.04 ($58.88 per hour x 8 hours = $471.04).  Using these figures, Plaintiff's failure to pay wages at termination claim places up to **$1,562,169.60**[11] at issue.

### 5. Plaintiff's Unreimbursed Business Expense Claim Places Even More At Issue, But The Complaint Is So Vague Defendants Cannot Begin To Estimate The Amount In Controversy.

Plaintiff's Seventh Cause of Action for failure to reimburse necessary business expenses alleges that Defendants "intentionally and willfully failed to reimburse Plaintiff and other class members for all necessary business-related expenses and costs."  (Compl. ¶ 92.)  As explained in *Tan v. GrubHub, Inc.*, to state a claim for unreimbursed business expenses under Labor Code Section 2802, "[m]erely alleging

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

---

[11] $471.04 (Daily Rate) x 30 (Maximum Number of Days) x 108 (Putative Class Members) = $1,562,169.60.

failure to reimburse unspecified work-related expenses is not enough to state a Section 2802 claim."  171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016).  Rather, a plaintiff must "identif[y] the particular expenses that were not reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties."  *Id.*

Here, Plaintiff's conclusory allegation is not only insufficient to state a claim (see Defendants' Motion to Dismiss Or Strike), but his failure to identify any specific expense(s) incurred precludes Defendants from beginning to estimate the value of the claim.  The Court, however, should not countenance Plaintiff's vague pleading by permitting him to evade federal jurisdiction.  The Court should deny Plaintiff's Motion.

### 6.   Attorneys' Fees Are Properly Included And Add At Least Another $864,906.74 To The Amount In Controversy.

Although Plaintiff contends Defendants improperly included attorneys' fees in their calculation, he fails to cite any authority for this proposition.  The absence of authority supporting Plaintiff's argument is not surprising given the well-settled rule that "[t]he amount in controversy includes the amount of damages in dispute, *as well as attorney's fees, if authorized by statute or contract*."  *Kroske v. U.S. Bank Corp.*, 432 F. 3d 976, 979 (9th Cir. 2005) (emphasis added); *see also Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998).  "Courts in this circuit have held that, for the purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages."  *Fong*, 2014 WL 26996 at *7; *see, e.g.*, *Staton v. Boeing Co.*, 327 F. 3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Altamirano v. Shaw Industries, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) (denying motion to remand after concluding estimate of attorneys' fees in the amount of 25% of damages was reasonable).

Here, Plaintiff seeks to recover attorneys' fees if successful on his claims for unpaid overtime, unpaid minimum wages, and unreimbursed business expenses.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1  (Prayer for Relief ¶¶ 8, 26, 43.)  The Labor Code authorizes an award of attorneys' fees

2  to parties who prevail on those claims.  Cal. Labor Code §§ 1194(a), 2802(d).  As such,

3  while the $5M minimum is met regardless of whether attorneys' fees are included in the

4  amount in controversy calculation, if the Court finds the estimates associated with

5  Plaintiff's claims for meal and rest periods, unpaid minimum and overtime wages, and

6  failure to pay wages upon termination insufficient, attorneys' fees in the amount of 25%

7  of the projected damages for unpaid minimum and overtime wages ($864,906.74[12] or

8  25% of the amount the Court determines is put at issue by those claims) should be

9  included in the calculation.  Thus, the amount in controversy as to CAFA is easily met.

10  ### 7.   Plaintiff's Argument That Defendants' Calculations Are Overinflated Because They Assume A 40-Hour Workweek Is Frivolous And Immaterial.

13  Plaintiff argues that Defendants' regular rate calculation is overinflated because it

14  assumes putative class members worked 40 hours per week (instead of an unspecified

15  amount over 40).  (Motion at 1:21-2:5, 11:7-11.)  This argument is frivolous and

16  immaterial.  First, Plaintiff did not cite any precedential legal authority[13] for his

17  argument that Defendants should have used actual hours instead of 40 hours when

18  calculating the regular rate for commissioned employees.

19  Second, Defendants provided evidence that Plaintiff was employed as a full-time

20  employee scheduled to work 40 hours per week (Quesnelle Decl. ¶ 6), and Plaintiff

21  alleges that he and the putative class members worked similar hours (see, e.g., Compl.

22  ¶¶ 11, 14-15, 47).  Despite his obligation, Plaintiff failed to submit contrary evidence.

23  See, e.g., Dart, 574 U.S. at 89 ("both sides" required to "submit proof"); Lewis, 627 F.

24  3d at 398, 401 (9th Cir. 2010) (holding violation rates proposed by removing defendant

25  reasonable in the absence of contradictory evidence).  Thus, Defendants' assumption

---

[12] $3,459,626.94 (Amount in Controversy for Minimum Wage Claim [$562,554.30] + Overtime Claim [$2,897,072.64]) x 25% = $864,906.74.

[13] The only citation Plaintiff provides is to the Richard Simmons Wage and Hour Manual for California Employers, which is not binding precedent.  (Motion at 2:25-3:1.)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1  that Plaintiff and the putative class members worked a 40-hour workweek is not

2  speculative, but reasonable based on the totality of the evidence and allegations.

3      Third, even if Plaintiff and the putative class members worked 45 or 50 hours per

4  week, ceteris paribus (i.e. all other assumptions, including only one overtime violation

5  and an eight-hour workday for the purpose of calculating penalties for the wages upon

6  termination claim, remain the same), the amount in controversy would not fall below

7  $5M.  At 45 hours per week, Plaintiff's and the putative class members' regular rate is

8  $52.33[14].  A regular rate of $52.33 results in an amount in controversy of no less than

9  $15,577,249.67 ($10,299,171.96[15] [Meal & Rest Period] + $2,574,792.99[16] [Overtime]

10  + $562,554.30 [Minimum Wage] + $1,356,393.60[17] [Wages Upon Termination] +

11  $784,336.82[18] [Attorneys' Fees]).

12      At 50 hours per week, Plaintiff's and the putative class members' regular rate is

13  $47.10[19].  A regular rate of $47.10 results in an amount in controversy of no less than

14  $14,090,696.70 ($9,269,845.20[20] [Meal & Rest Period] + $2,317,461.30[21] [Overtime] +

15  $562,554.30 [Minimum Wage] + $1,220,832.00[22] [Wages Upon Termination] +

16  $720,003.90[23] [Attorneys' Fees]).  In sum, assuming Plaintiff and the putative class

17  members worked 50 hours per week, ceteris paribus, the amount in controversy still far

18  exceeds the $5M amount-in-controversy requirement.

19

---

[14] $2,355 (Average Commission per Workweek) / 45 (Hours per Workweek) = $52.33.

[15] ($52.33 [Regular Rate per Hour] x 3 [Meal Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) + ($52.33 [Regular Rate per Hour] x 3 [Rest Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) = $10,299,171.96.

[16] 32,802 (Approximate Workweeks in Liability Period) x 1 (Violation per Workweek) x $52.33 (Regular Rate per Hour) x 1.5 (Overtime Rate) = $2,574,792.99.

[17] $418.64 (Daily Rate) x 30 (Maximum Number of Days) x 108 (Putative Class Members) = $1,356,393.60.

[18] $3,137,347.29 (Amount in Controversy for Minimum Wage Claim [$562,554.30] + Overtime Claim [$2,574,792.99]) x 25% = $784,336.82.

[19] $2,355 (Average Commission per Workweek) / 50 (Hours per Workweek) = $47.10.

[20] ($47.10 [Regular Rate per Hour] x 3 [Meal Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) + ($47.10 [Regular Rate per Hour] x 3 [Rest Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) = $9,269,845.20.

[21] 32,802 (Approximate Workweeks in Liability Period) x 1 (Violation per Workweek) x $47.10 (Regular Rate per Hour) x 1.5 (Overtime Rate) = $2,317,461.30.

[22] $376.80 (Daily Rate) x 30 (Maximum Number of Days) x 108 (Putative Class Members) = $1,220,832.

[23] $2,880,015.60 (Amount in Controversy for Minimum Wage Claim [$562,554.30] + Overtime Claim [$2,317,461.30]) x 25% = $720,003.90.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1    <u>Fourth</u>, for the amount in controversy to fall below $5M, ceteris paribus, the

2    putative members would have had to work 156 hours per week.  At 156 hours per week

3    – which is not only speculative, but virtually impossible, the regular rate is $15.10[24] per

4    hour and the amount in controversy is $4,995,152.70 ($2,971,861.20[25] [Meal & Rest

5    Period] + $742,965.30[26] [Overtime] + $562,554.30 [Minimum Wage] + $391,392.00[27]

6    [Wages Upon Termination] + $326,379.90[28] [Attorneys' Fees]).  That calculation,

7    however, does not account for variable change in, for example, the number of overtime

8    violations.  In other words, if the putative class members worked 156 hours per week,

9    they would be entitled to 116 hours of overtime – not 1 hour, which Defendants

10   assumed in the calculations above.  Accounting for variable change for the overtime

11   claim only[29] and conservatively applying a one and one-half times overtime rate[30] for

12   each hour, the amount in controversy is at least $111,796,414.58 ($2,971,861.20 [Meal

13   & Rest Period] + $86,183,974.80[31] [Overtime] + $562,554.30 [Minimum Wage] +

14   $391,392.00 [Wages Upon Termination] + $21,686,632.28[32] [Attorneys' Fees]).  Thus,

15   Defendants have shown the amount in controversy is over $5M and the Court must

16   exercise jurisdiction under CAFA.

17   ///

18   ///

19   ///

---

[24] $2,355 (Average Commission per Workweek) / 156 (Hours per Workweek) = $15.10.

[25] ($15.10 [Regular Rate per Hour] x 3 [Meal Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) + ($15.10 [Regular Rate per Hour] x 3 [Rest Period Violations per Workweek] x 32,802 [Number of Workweeks During Class Period]) = $2,971,861.20.

[26] 32,802 (Approximate Workweeks in Liability Period) x 1 (Violation per Workweek) x $15.10 (Regular Rate per Hour) x 1.5 (Overtime Rate) = $742,965.30.

[27] $120.80 (Daily Rate) x 30 (Maximum Number of Days) x 108 (Putative Class Members) = $391,392.00.

[28] $1,305,519.60 (Amount in Controversy for Minimum Wage Claim [$562,554.30] + Overtime Claim [$742,965.30]) x 25% = $326,379.90.

[29] The amount in controversy for the wages upon termination claim would also increase because the putative class members' daily rate (regular rate per hour x hours worked per day) would be higher since they would be working more hours per day.

[30] Many of the hours would qualify for compensation at "twice the regular rate." Cal. Labor Code § 510(a).

[31] 32,802 (Approximate Workweeks in Liability Period) x 116 (Violation per Workweek) x $15.10 (Regular Rate per Hour) x 1.5 (Overtime Rate) = $86,183,974.80.

[32] $86,746,529.10 (Amount in Controversy for Minimum Wage Claim [$562,554.30] + Overtime Claim [$86,183,974.80]) x 25% = $21,686,632.28.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

C.   **Defendants' Evidence And Reasonable Assumptions Establish The Amount In Controversy More Likely Than Not Exceeds The $75,000[33] Complete Diversity Minimum – 28 U.S.C. § 1332(a).**

During Plaintiff's employment with Howmedica, he was a full-time employee scheduled to work approximately five (5) days per week.  (Quesnelle Decl. ¶ 6.) Between August 1, 2016 and June 30, 2017, Plaintiff was paid an annual salary of $70,000.  (*Id.* at ¶ 7.)  From July 1, 2017 to August 8, 2017, Plaintiff earned $9,939.48 in commissions.  (*Id.* at ¶ 8.)

As previously explained, Plaintiff's allegation that Defendants engaged in a "pattern and practice" of wage abuse, coupled with Plaintiff's failure to plead facts concerning the frequency of the alleged violations or to submit evidence suggesting any limitation to the violation rates, are an adequate basis for Defendants' assumption of up to 100% violation rates for each claim.  *See, e.g.*, *Lewis*, 627 F. 3d at 398, 401; *Rea*, 742 F. 3d at 1239; *Patel*, 58 F. Supp. 3d at 1040-42; *Bryant*, 284 F. Supp. 3d at 1151; *Lopez*, 2015 WL 2342558 at *3; *Herrera*, 2014 WL 12586254 at *2.

1.   **The Amount In Controversy For Plaintiff's Individual Meal And Rest Period Claims Is At Least $19,985.40.**

From August 1, 2016 to June 30, 2017, Plaintiff's regular rate was $36.46[34]. From July 1, 2017 to August 8, 2017, Plaintiff's regular rate was $41.41[35].  Assuming a 100% violation rate, the amount in controversy is at least **$19,985.40** ($8,750.40[36] + $1,242.30[37] + $8,750.40[38] + $1,242.30[39]).  *See, e.g.*, *Bryant*, 284 F. Supp. 3d at 1151

---

[33] Some figures below differ from the amount set forth in the Notice due to an inadvertent mathematical error in calculating the regular rate between August 1, 2016 and June 30, 2017.

[34] $70,000 (Annual Salary) / 48 (Workweeks) = $1,458.33 (Pay Per Workweek). $1,458.33 (Pay per Workweek) / 40 (Hours per Workweek) = $36.46 (Regular Rate).

[35] $9,939.48 (Earned Commissions) / 6 (Workweeks) = $1,656.58 (Commissions per Workweek).  $1,656.58 (Commissions per Workweek) / 40 (Hours per Workweek) = $41.41 (Regular Rate).

[36] 48 (Approximate Workweeks in Liability Period) x 5 (Meal Period Violations per Workweek) x $36.46 (Regular Rate) = $8,750.40 (Amount in Controversy as Sales Associate for Meal Period Claim).

[37] 6 (Approximate Workweeks in Liability Period) x 5 (Meal Period Violations per Workweek) x $41.41 (Regular Rate) = $1,242.30 (Amount in Controversy as Sales Representative for Meal Period Claim).

[38] 48 (Approximate Workweeks in Liability Period) x 5 (Rest Period Violations per Workweek) x $36.46 (Regular Rate) = $8,750.40 (Amount in Controversy as Sales Associate for Rest Period Claim).

21

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1  (holding that a Complaint alleging a policy and practice of meal and rest period

2  violations with no guidance as to the frequency justifies an estimate of up to five missed

3  meal periods and five missed rest periods per week).

4      Although Plaintiff argues Defendants may only assume one violation per week

5  citing *Blevins v. Republic Refrigeration, Inc.*, CV 15-04019 MMM (MRWx), 2015 WL

6  12516693, at *9 (C.D. Cal. Sept. 25, 2015), *Blevins* did not hold that it was

7  unreasonable to assume more than one violation per week.  In other words, *Blevins* did

8  not place a cap on the violation rate; it merely accepted defendant's estimate as

9  reasonable because plaintiff failed to submit evidence in support of an alternative.  *Id.*

10     **2.**    **The Amount In Controversy For Plaintiff's Individual**

11        **Overtime Claim Is At Least $44,967.15.**

12     Based on a reasonable estimate of fifteen (15) hours of unpaid overtime per

13 week[40] and using the lower overtime rate of one and one-half times Plaintiff's regular

14 rate for all overtime hours (as opposed to double-time), the amount in controversy for

15 Plaintiff's individual overtime claim is at least **$44,967.15** ($39,376.80[41] + $5,590.35[42]).

16     **3.**    **The Amount In Controversy For Plaintiff's Minimum Wage**

17        **Claim Is At Least $5,875.**

18     Based on a reasonable estimate of five (5) violations per week, the amount in

19 controversy for the unpaid wage portion of Plaintiff's minimum wage claim is

20 $2,937.50 (1,100.00[43] + $1,837.50[44]).  Liquidated damages adds another $2,937.50 to

21 the amount in controversy.  Therefore, the total amount in controversy for Plaintiff's

---

23 [39] 6 (Approximate Workweeks in Liability Period) x 5 (Rest Period Violations per Workweek) x $41.41 (Regular Rate) = $1,242.30 (Amount in Controversy as Sales Representative for Rest Period Claim).

24 [40] This estimate is far less than far less than the 116 overtime hours that, as explained in Section IV(B)(7) herein, Plaintiff's Motion suggests (156 hours – 40 hours).

25 [41] 48 (Approximate Workweeks in Liability Period) x 15 (Violations per Workweek) x $36.46 (Regular Rate) x 1.5 (Overtime Rate) = $39,376.80 (Amount in Controversy as Sales Associate).

26 [42] 6 (Approximate Workweeks in Liability Period) x 15 (Violations per Workweek) x $41.41 (Regular Rate) x 1.5 (Overtime Rate) = $5,590.35 (Amount in Controversy as Sales Representative).

27 [43] 22 (Approximate Workweeks in Liability Period in 2016) x 5 (Violations per Workweek) x $10.00 (Minimum Wage in 2016) = $1,100.00 (Amount in Controversy as Sales Associate).

28 [44] 35 (Approximate Workweeks in Liability Period in 2017) x 5 (Violations per Workweek) x $10.50 (Minimum Wage in 2017) = $1,837.50 (Amount in Controversy as Sales Representative).

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

minimum wage claim is at least **$5,875**.

Plaintiff criticizes Defendants' allocation of unpaid hours to his overtime and minimum wage claims on the ground that it is "impossible to draw any conclusions regarding entitled to minimum wages v. overtime wages."  (Motion at 18:22-19:22.) Plaintiff's criticism, however, goes to the heart of Defendants' argument: where the allegations are prone to different interpretations and Plaintiff does not submit evidence to clarify them, Defendants are entitled to assume the maximum possible amount.  In the context of this claim, that means it is reasonable for Defendants to assume he worked fifteen (15) overtime hours for which he was not paid and five (5) hours for which he was not paid minimum wages, which is not inconsistent with Plaintiff's allegations.  (See Compl. ¶¶ 23 ["Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants."], 74 ["Defendants failed to pay minimum wages to Plaintiff . . . ."].)

### 4.   The Amount In Controversy For Plaintiff's Non-Compliant Wage Statement Claim Is At Least $2,550.00.

Plaintiff alleges that "[a]s a pattern and practice, Defendants have . . . failed to provide Plaintiff and the other class members with complete and accurate wage statements," which "include but are not limited to: the failure to include the total number of hours worked by Plaintiff and other class members."  (Compl. ¶¶ 85, 31.)

"An employee suffering injury as a result of a knowingly and intentional failure by an employer to [provide accurate, itemized wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequently pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) . . . ."  Cal. Labor Code § 226(e).  Howmedica provided Plaintiff with twenty-six (26) wage statements within the liability period.  (Quesnelle Decl. ¶ 9.)  Thus, the amount in controversy for this claim is **$2,550.00**.[45]

---

[45] $50.00 ($50.00 x 1 wage statement) + $2,500.00 ($100.00 x 25 wage statements) = $2,550.00.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Plaintiff's argument that he has no individual wage statement claim directly conflicts with his position that he "does not concede he is unable to represent the class" as to the alleged Labor Code section 226 claim.  Thus, Defendants reasonably assume Plaintiff still intends to represent the class as to the Labor Code section 226 claim and, therefore, include potential penalties attributable to this claim.  But even if the Court does not include this in the amount in controversy, the $75k minimum still is met.

### 5. The Amount In Controversy For Plaintiff's Failure To Pay Wages Upon Termination Claim Is At Least $9,938.40.

Using Plaintiff's rate of pay in effect at the time of his termination ($41.41), the amount in controversy for this claim is **$9,938.40**.[46]  Although Plaintiff criticizes Defendants for failing to "specify the records reviewed" (Motion at 21:4-6), there is no requirement that Defendants identify or provide the specific records to satisfy its burden.  *See, e.g.*, *Soratori*, 2017 WL 1520416 at *3 (holding declaration providing summary of business records sufficient to satisfy removing defendant's burden).  While Plaintiff "disputes" Defendants' regular rate calculation, he has failed to submit contrary evidence.  As such, Defendants' calculations are unopposed and reasonable.

### 6. Attorneys' Fees Place At Least $13,348.03 At Issue.

Plaintiff does not dispute Defendants' use of a benchmark of 25% for attorneys' fees for the purpose of calculating the amount in controversy.  His only argument is that Defendants' calculations concerning the amount in controversy of the underlying claims is unreasonable.  For the reasons explained above, they are not.

Applying a reasonable rate of 25% to the value of Plaintiff's claims for unpaid overtime, unpaid minimum wages, and inaccurate wage statements alone adds an additional **$13,348.03**[47] to the amount in controversy in this case.

///

---

[46] $41.41 (Regular Rate) x 8 (Hours per Day) x 30 (Number of Days Allegedly Not Paid) = $9,938.40.
[47] $44,967.15 (Overtime Wages) + $5,875 (Minimum Wages) + $2,550.00 (Non-Compliant Wage Statements) = $53,392.15 (Amount in Controversy for Overtime, Minimum Wage, and Non-Compliant Wage Statement Claims).  $53,392.15 x .25 (Attorneys' Fees Percentage) = $13,348.03.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

1

2

### 7.    A Court Can Exercise Jurisdiction Under 28 U.S.C. § 1332(a) In A Class Action.

Plaintiff has no authority to support his argument that the Court cannot establish federal jurisdiction via 28 U.S.C. § 1332(a) in a class action case (Motion at 14:20-21), and Defendants are aware of none.  28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d)(2) offer independent bases for establishing federal jurisdiction in any case.  There is nothing in the plain language of the statute suggesting a class action case cannot be removed under 28 U.S.C. § 1332(a) if the requirements are met.  *See Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise . . . .").  Thus, the Court may establish jurisdiction under either statute.

## V.    CONCLUSION

Defendants' calculations based on Plaintiff's allegations and the evidence in the record show the amount in controversy for the class claims is at least **$17,474,993.84** – well over $5M – and **$96,663.98** – well over $75k for the individual claims.  For those reasons and the reasons set forth in Defendants' Notice, the Court should deny Plaintiff's Motion in its entirety and retain jurisdiction over this case.

DATED:  February 18, 2020                   HUNTON ANDREWS KURTH LLP

                                        By:  */s/ Gabriel M. Huey*
                                            Michele J. Beilke
                                            Julia Y. Trankiem
                                            Gabriel M. Huey

                                            Attorneys for Defendants
                                            STRYKER CORPORATION and
                                            HOWMEDICA OSTEONICS CORP.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071